IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:06-CR-176 |
| | ) | (Varlan / Shirley) |
| J. WILL ROBINSON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF DETENTION PENDING TRIAL

This case came before the Court on January 26, 2007, for a detention hearing pursuant to 18 U.S.C. 3142. Assistant United States Attorney Tracee Plowell was present representing the government. Attorney Kim Tollison was present representing the defendant, who was also present. The government sought to have the defendant detained pretrial, contending that there were no conditions that would reasonably ensure the appearance of the defendant and the safety of the community. See 18 U.S.C. § 3142(e).

With respect to the facts underlying the present charge of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), the government asked that the facts set forth in the complaint be incorporated into the record for the hearing and then proceeded by proffer. Assistant United States Attorney Plowell stated that she had been in contact with federal law enforcement authorities in the Roanoke, Virginia area who provided relevant information about defendant's involvement in an investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Assistant United States Attorney Plowell reported that the defendant was found to be in possession of five pairs of night vision goggles produced for the military. As part of

1

an ATF investigation, defendant had sold a pair of these goggles to an undercover agent. Assistant United States Attorney Plowell relayed to the Court the intention of the United States Attorney in Roanoke, Virginia to seek an indictment for that conduct along as well as a charge stemming from a gun located at defendant's residence. For a reason unknown to the government at this hearing, the defendant was informed that an indictment would be forthcoming, but was allowed a period of time to tie up personal affairs beforehand. With the assent of the ATF investigators, defendant traveled to Middlesboro, Kentucky to see his father and then to Naples, Florida to see his mother. A few days after the defendant left his mother's home in Florida, Tennessee authorities received a complaint call about the defendant.

The government's proffer continued as follows. On December 8, 2006, Sevier County Sheriff's deputies responded to a call that defendant was causing a disturbance. Responding deputies interviewed the complainants and based upon the information they learned, looked inside defendant's van parked at the property. Seeing a bullet proof vest in the front seat, deputies sought and obtained a search warrant for the vehicle. Inside the vehicle were found the firearms and ammunition that form the basis of this indictment. In addition were a bullet proof vest, a kevlar helmet and a receipt for purchase of 15 boxes of ammunition from a Wal-Mart store dated December 7, 2006. The complainants reported that the defendant had told them he was "on the run" from the ATF in Virginia and had plans to flee the country, employing the guns to cross the border.

The government had obtained a poor quality fax copy of a Florida felony conviction of the defendant. The poor quality of the copy did not provide a clear disposition.

Kim Tollison made a proffer in support of the defendant's release from custody. Mr. Tollison's review of the poor quality fax conviction led him to believe it held the notation,

2

"adjudication of guilty withheld." Mr. Tollison reported to the Court that the reason the defendant was afforded the opportunity to visit family before his indictment was that he was "working with" the ATF agent prior to being charged. Mr. Tollison proffered that the defendant was conducting his affairs exactly as he had indicated to Virginia authorities; he was traveling back to Roanoke, Virginia from Naples, Florida when he began to experience automotive trouble.[1] The defendant was acquainted with the Hodge family in Sevier County and opted to stay with them for a time. It was during this time that a dispute between the Hodges and defendant erupted.

Either precipitating or exacerbating the dispute was the fact that the defendant was having problems with medication. According to the information available to Mr. Tollison, the defendant was diagnosed as bi-polar nine years ago and had been taking a course of medication to address the symptoms. Among these medications was Lithium. When he realized he was likely to serve time on the Virginia matters, the defendant stopped taking his prescribed medications.[2] In addition, defendant had taken Oxycontin in the past to manage pain from an undisclosed injury, but had stopped taking this medicine when he suspected an addiction. As an aid to quit Oxycontin, defendant had been using methadone for at least one year. recently, the defendant had stopped his use of methadone as well.

Mr. Tollison proposed release to a third party custodian, defendant's wife, Bridget Robinson. Mrs. Robinson was present throughout the hearing. Mr. Tollison proffered that the defendant owns a home in Roanoke, Virginia, where he lives with his wife and daughter. The defendant has been

---

[1] Defendant was driving his mother's van from Naples, Florida to Roanoke, Virgina. No reason was provided at the hearing.

[2] Defendant had also been prescribed Neurontin, Xanax, Prilosec and ibuprofen, which he likewise stopped taking in anticipation of imprisonment.

working as a master electrician, as he has for some 20 years. Mr. Tollison proposed a combination of electronic monitoring and home detention as less restrictive means of ensuring the defendant's appearance in court and the safety of the community. Defendant's physician, Dr. Desai, is likewise located in Roanoke, Virginia. Release would afford defendant continuity of medical treatment during this time of medication adjustment.

After consideration of all facts proffered to the Court, the Court found as follows:

> THE COURT: All right. The Court has a lot of questions and concerns about this matter, and candidly, there appears to be a number of gaps in the information that I have been provided. In addition, the defendant at least proffers that he has a defense to the charges in this case that he doesn't want to fully disclose now, and the Court understands that as well.
>
> I am left with the following; the Court doesn't know exactly what did transpire in Virginia or what transpired with regard to the defendant and the ATF.
>
> Under all of the proffers and scenarios offered it appears that the defendant knew he was going to face some kind of charges, yet for some reason the defendant was not immediately charged or arrested by ATF, and, apparently, they allowed him to leave Virginia.
>
> Then the Court knows that the defendant did leave Virginia, went to Kentucky, saw his dad, went to Florida, saw his mom, and up until that point it doesn't appear that the government considered him a

flight risk or a risk of danger, and I will be frank with you, if we were sitting here with only that, I don't believe I would either.

I have asked the question what changed? And I think in answering my own question I think some things did change. The first thing that appears that changed is the defendant took his mom's van. I don't know why. What I do know is that by December 8th, 2006, it was full of weapons and equipment.

Another thing that changed was apparently the defendant went off his medication. Again, I don't know why. I do know it didn't help.

I also know that he apparently left Virginia in some kind of a cooperative state of mind, as far as the government was concerned in late November, but by December the 6th he is telling people he is on the run, he has a Derringer in an ankle holster and he is claiming he is going to shoot his way across the border and leave the country.

It may be, as the defendant contends, that the complainant's statements aren't completely accurate in that regard, but I do note that the complainant mentions that they are not the complainant's statements they are defendant's statements, and, furthermore, the defendant's statements include statements regarding the night vision goggles, something only the defendant would know.

Then on December 8th the complainant says the defendant has a

5

bullet proof vest and a loaded .357 revolver, and, sure enough, after a search warrant, guns and the bullet proof vest are found.

There appears to be some accuracy to the complainant's statements and he adds that the defendant was saying by December the 8th that he would kill any police officers who came out to the scene and the defendant apparently proffers to the jailer at the jail that he would kill anyone who searched his van.

Now, the defendant may in fact claim and prove all the things that Mr. Tollison intimated; that he didn't know about these weapons, they weren't his and things of that nature, but the Court is left at this point with limited facts which include the defendant claiming that the armory in Virginia sold him "all kinds stuff", that he had been in this same van since Naples, Florida, that the detective was able to look in the van and see in plain view the bullet proof vest and Kevlar helmet and that the detective found lots of weapons and ammunition and loaded weapons.

Regarding the defendant's involvement in all this and his intent, the Court notes for the record not only the history of the incident in Virginia, not only the accounts of the defendant's statements in Tennessee, and not only all of the weapons found in the van that the defendant was driving, but the Court also notes that between the December 6th incident and between the December 8th incident on

December the 7th, 15 boxes of ammunition were purchased and the receipt for that purchase was found in the van.

Based on all of the evidence before me, I believe that at least on December 6th, December 7th and December 8th the defendant was a clear and present danger.

That brings me to today. Now, the defendant may have, as defendant has proffered, acted in that fashion because he had gone off this medication. The Court would say in that case, if that is true, then when he is off his medication he is clearly a danger. The problem facing the Court is he is currently off his medication. If he is released, he will be released off his medication and, frankly, I have no reason to believe and no assurance that he will go back on his medication, or even if he does, that he would stay on his medication. The reason for that is he left his doctor in Roanoke, when he left Roanoke and went off his medication a month ago.

If he did that because of the stress and the concern over the potential charges in Virginia, then the fact that those charges are now becoming a reality; and added to those he has these charges; the stresses are not less, but much greater, and so the reasons for him going off his medicine before are only enhanced.

Therefore, I believe that the defendant is still a clear and present danger and I find that there is clear and convincing evidence that he

is a danger to the community and to others, including his family, and I believe that his release would endanger the community and others and there are absolutely no conditions which would reasonably assure me to the contrary.

Having made that decision, I do not address the flight risk issues.

Accordingly, for all those reasons, Mr. Robinson, I am going to find that you must remain in detention in federal custody pending the trial of this case.

Accordingly, based on these facts and reasons and my finding that there is no condition or combination of conditions of release that would reasonably assure the safety of the community, the defendant is **ORDERED** detained. For the reasons indicated, the government's initial Motion for Pretrial Detention is hereby **GRANTED**.

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultations with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

ENTER:

　s/ C. Clifford Shirley, Jr.　
United States Magistrate Judge