UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:06-CR-176 |
| | ) | (VARLAN/SHIRLEY) |
| J. WILL ROBINSON, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. Defendant J. Will Robinson's Motion to Suppress Evidence [Doc. 18] is presently pending before this Court. This matter came before the Court for a hearing on April 5, 2007. Assistant United States Attorney Tracee Plowell was present for the government. Attorney Kim Tollison was present representing Defendant J. Will Robinson ("Defendant"), who was also present. Supplemental briefs, requested by the Court as to certain legal issues, were filed by both parties on April 10, 2007. [Docs. 30, 31].

Defendant J. Will Robinson has been indicted [Doc. 2] on one count of previously being convicted in courts of crimes punishable by terms of imprisonment exceeding one year and knowingly possessing a firearm, specifically, a Davis Industries .22 caliber Derringer pistol; a Taurus .357 Magnum revolver; a Bushmaster .223 caliber semiautomatic file, and ammunition, in

1

violation of 18 U.S.C. Section 922(g)(1). These charges arise out of the seizure of the aforementioned guns and ammunition, which were found in a Ford Windstar on December 9, 2006.

## I. BACKGROUND

Defendant has moved to suppress any and all evidence seized from a search of a 2000 Ford Windstar van on or about December 9, 2006. [Doc. 18]. In support thereof, the Defendant argues that the Affidavit for the search warrant lacked the probable cause necessary for the issuance of a valid search warrant. [Doc. 19]. Specifically, Defendant argues that there is no mention in the affidavit that the defendant had been in the van, no one saw weapons or ammunition in the van, and there is no mention of anything in the van which might pertain to a criminal violation. Accordingly, Defendant concludes that the search warrant is invalid, and suppression of any and all evidence is the sole remedy.

In response, the government argues the warrant is sufficient based on witness statements, detective corroboration, and consent from the van's owner. [Doc. 21] Additionally, the officers acted in good faith in searching the vehicle. Accordingly, Defendant's motion should be denied.

The hearing was scheduled for an evidentiary hearing. However, on April 5, both the government and the defense announced that they would be relying entirely on their briefs and a short oral argument. No evidence was to be presented, besides that set forth in the affidavit, which was attached to the government's response to Defendant's motion to suppress [Doc. 21-2] and moved into evidence as Government Exhibit 1.

The attorneys generally argued consistent with their briefs, stating that the motion necessitated a four corners review of the affidavit. Defendant's attorney argued the affidavit was void of probable cause indicating that contraband was in the van, whereas the government's attorney argued there was. The attorneys also argued about the consent to search. Both parties agreed that Defendant's mother, not Defendant himself, consented to the search. Defendant's mother was the registered owner of the vehicle. A question arose as to whether her consent would suffice as valid consent to search, even though she was not in possession of the van when it was searched. The Court requested that the parties submit supplemental briefs on whether the mother's consent constituted legitimate consent.

The post-hearing briefs were filed on April 10, 2007. Defendant argues that consent was not valid because Defendant's expectation of privacy in the van "trumped" all other persons' expectations of privacy in the van, he had sole possession of the van, the van was locked, and Defendant's mother had relinquished any expectation of privacy in the van when she sold it to Defendant.[1] [Doc. 31]. Additionally, Defendant never consented to the search. The government argues that a third party who possesses common authority over the property can consent to a search and, regardless, the officers acted in good faith reliance on Defendant's mother's consent. [Doc. 30].

---

[1] The first time the Court learned that Defendant had purportedly purchased the van from his mother and ownership documentation was pending was in this post-hearing brief. No evidence has been presented to substantiate this allegation. The sole evidence in this case establishes that Defendant's mom was the registered owner of the van when the search took place. The Court does note that in a prior detention hearing, the only reference to the van was to the effect that it was Defendant's mother's van.

## II. FACTS

As the sole evidence presented at the hearing, the only facts to be delineated are those contained within the affidavit. [Government Ex. 1]. The affidavit and application, signed by Detective Stephanie McClure on December 9, 2006, requested permission to search a white, 2000 year model, Ford Windstar van bearing Florida tags. According to the affiant, the van was registered to Vickie V. Givens of 435 Seagull Avenue, Naples, Florida. The vehicle was towed to an impound lot at 760 Rainbow Road, Sevierville, Tennessee, and was known to be secure. In support of the application, the affiant averred:

> On Friday evening December 8, 2006 at approximately 1926 hours, Officer Brian Webber was dispatched to 1314 Hodges Farm Way Sevierville, TN 37862, Sevier County, Tennessee. Affiant was called to the scene and arrived at approximately 2033 hours.
>
> The resident owner, Mr. Stephen Hodges, stated to your affiant that J. Will Robinson (alias)[2] was known to him as a prior neighbor. Stephen Hodges stated that J. Will Robinson (alias) showed up at his residence unannounced on Wednesday, December 6, 2006 at approximately 2300 hours and knocked on his door. Stephen Hodges stated that J. Will Robinson (alias) was driving a 2006 silver new Volvo that J. Will Robinson (alias) told Stephen Hodges was a rental vehicle from the Knoxville McGhee Tyson Airport. Stephen Hodges stated that J. will Robinson (alias) told him that he was on the run from the ATF[3] in Virginia because he had bought stolen night scope equipment, and the ATF had confiscated his corvette. Stephen Hodges said that he witnessed J. Will Robinson (alias) with 1300.00 in cash in hundred dollar bills. Stephen Hodges stated that J. Will Robinson (alias) showed him a .22 Magnum Derringer firearm strapped to his ankle. Stephen Hodges stated that J. Will Robinson (alias) told him that he was going to shoot his way across the border

---

[2] Though Detective McClure referred to J. Will Robinson as "(alias)" throughout the affidavit, it appears to this court that "J. Will Robinson" is Defendant's proper name and not merely an alias.

[3] Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

4

and leave the country. Stephen Hodges said that J. Will Robinson left without further incident at approximately 130 hours.

On this date, December 8, 2006, Mr. Stephen Hodges stated that he came home from work tonight and saw a white Ford minivan parked across from his residence. Stephen Hodges stated that when he got inside his house he heard a knock on the door and went to the door to find J. Will Robinson. Stephen Hodges stated that J. Will Robinson went outside and saw that J. Will Robinson was driving the 2000 model white Ford Windstar van registered to Vickie V. Givens of 435 Seagull Avenue, Naples, Florida 34108-2149. Stephen Hodges stated that he witnessed J. Will Robinson in possession of a bullet proof vest and a .357 Taurus with black talon (armor piercing bullets). Stephen Hodges stated that he saw J. Will Robinson in possession of two (2) drums for an AR-15 firearm. Stephen Hodges stated that J. Will Robinson (alias) told him that he had went to an armory today and posed as the same ATF agent that had arrested him and that the armory had sold him all kinds of stuff. Stephen Hodges stated that he called for help from the Sheriff's Department and that J. Will Robinson (alias) stated that he would kill any police officer that responded. Stephen Hodges stated that he was very concerned for the welfare of the officers, his family and the general public.

Your affiant witness in plain view in the dash front window a camoflauge [sic] vest and a helmet and a silver badge. Your affiant contacted the registered owner of the 2000 model white Ford Windstar van who is a Vickie V. Givens of 435 Seagull Avenue, Naples, Florida 34108-2149 at approximately 0957 hours by telephone. Vickie V. Givens is the biological mother of J. Will Robinson (alias). Request that we search her vehicle because she felt that J. Will Robinson (alias) was a danger to himself. Vickie V. Givens told your affiant that J. Will Robinson (alias) was addicted to methamphetamine and that he was experiencing detox symptoms.

Affiant made contact with Agent Steve Short with the ATF in Roanoke, Virginia, and Agent Short verified to your affiant that J. Will Robinson (alias) is a convicted felon and that he is expected to be indicted for theft of government property and felony possession of a firearm at the first of the year 2007. Agent Short told your affiant that J. Will Robinson (alias) is known to him and that Agent Short considered J. Will Robinson (alias) to be armed and extremely dangerous. Your affiant has probable cause to believe that J. Will Robinson (alias) is a convicted felon who is attempting to flee from justice and has in the white 2000 Ford Windstar van bearing TN

5

> E904HE VIN/2FMZA5341YBA52999 firearms, ammunition, armor protection, badges and identification, money and possibly other articles of evidence value.

(Government's Ex. 1) (formatting edited). This affidavit was the only piece of evidence presented to this Court for review. Accordingly, the Court will proceed with a four corners review of the affidavit to ascertain whether it established sufficient facts to issue a search warrant. Additionally, the Court will evaluate whether consent or the good faith exception apply.

### III.  ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. In this respect, a judge shall not issue a warrant for the search of personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Defendant argues that the affidavit for the search warrant lacked the probable cause necessary for the issuance of a valid search warrant, invalidating the search warrant. [Doc. 19]. Additionally, Defendant avers that if consent was obtained from his mother, such consent was invalid. [Doc. 31]. Accordingly, Defendant argues that all evidence seized must be suppressed.

In response, the government argues the warrant is sufficient based on witness statements, detective corroboration, and consent from the van's owner. [Docs. 21, 30]. Additionally, the officers acted in good faith in searching the vehicle. Accordingly, Defendant's motion should be denied. The Court will address each of these issues in turn.

## A. Search Warrant

In determining the sufficiency of the search warrant affidavit, the Court is "concerned only with the statements of fact contained in the affidavit," otherwise known as a "four corners review." United States v. Hatcher, 473 F.2d 321, 323 (6th Cir. 1973); United States v. Smith, 783 F.2d 648, 654 (6th Cir. 1986) (holding that a court assessing the validity of a search warrant is limited to the four corners of the warrant). Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). To make such a showing "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. at 244 n.13. Thus, the Supreme Court has observed that probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," Carroll v. United States, 267 U.S. 132, 162 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. Brinegar v. United States, 338 U.S. 160, 176 (1949); Texas v. Brown, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990).

Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances. Gates, 462 U.S. at 238. Initially, the Court notes that the issuing judge's determination that probable cause exists is entitled to "'great deference.'" United States v.

Allen, 211 F.3d 970, 973 (6th Cir. 2000) (quoting Gates, 462 U.S. at 236). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. Id. In determining the sufficiency of the search warrant affidavit, the Court is "concerned only with the statements of fact contained in the affidavit." Hatcher, 473 F.2d at 323; see also Whiteley v. Warden, 401 U.S.560, 565 (1971). In reviewing the propriety of the search warrant, the Court considers "the evidence that the issuing magistrate had before him only '"to ensure that [he] ha[d] a substantial basis . . . for concluding that probable cause existed."' United States v. Jones, 159 F.3d 969, 973 (6th Cir. 1998) (quoting Gates, 462 U.S. at 238-39) (alterations in original).

In reviewing the application and affidavit in this case, it appears that the General Sessions Judge of Sevier County, Tennessee, had before him[4] the following evidence:

- A named citizen, Mr. Stephen Hodges, stated to the affiant on December 8, 2006 that J. Will Robinson appeared at his residence on December 6, 2006, and told him that he was on the run from the ATF in Virginia because he had bought stolen night scope equipment and his own car, a Corvette, had been confiscated;

- Mr. Hodges informed the affiant that J. Will Robinson had a .22 Magnum Derringer firearm strapped to his ankle;

- Mr. Hodges informed the affiant that J. Will Robinson told him that he intended to shoot his way across the border and leave the country;

- Mr. Hodges reported that J. Will Robinson again appeared at his house on that day, December 8, 2006, and that he was driving a white Ford minivan in this instance;

- Mr. Hodges stated that he witnessed J. Will Robinson in possession of a bullet proof vest, a .357 Taurus with black

---

[4]The parties did not inform the Court which General Sessions Judge signed the warrant. However, both of Sevier County's General Sessions Judges are male.

talon bullets (armor-piercing), and two drums for an AR-15 firearm;

- Mr. Hodges stated that J. Will Robinson told him that he had gone to an armory that day and posed as an ATF agent, and the armory had sold him things;

- Mr. Hodges stated that he called the Sheriff's Department for help and J. Will Robinson told him that he would kill any police officer who responded;

- Detective McClure looked through the van's windows and saw, in plain view, a camouflage vest, helmet, and a silver badge;
- The white, 2000 year model Ford Windstar had Florida tags;

- The affiant, Detective McClure ascertained the white Ford van's vehicle registration information, which was to Vickie V. Givens of Naples, Florida;

- Detective McClure contacted the registered owner of the van, Ms. Givens, by phone and learned that she is J. Will Robinson's biological mother;

- Ms. Givens stated that she believed J. Will Robinson might be a danger to himself because he was addicted to methamphetamine and was going through detox;

- Due to her fears that he might harm himself, Ms. Givens requested that the police search the vehicle;

- Detective McClure contacted Agent Steve Short with the ATF in Virginia, who verified that J. Will Robinson was a convicted felon and was expected to be indicted on theft of government property at the beginning of 2007;

- Agent Short further stated that he knew J. Will Robinson and believed him to be extremely dangerous; and

- Detective McClure stated that she had probable cause to believe that J. Will Robinson is a convicted felon and the white Ford Windstar van contained firearms and ammunition, among other items.

9

Based on this information, the General Sessions Judge of Sevier County issued a search warrant for the van.

The task of the issuing judge is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of a reviewing court is simply to ensure that the judge had a "substantial basis for . . . conclud[ing] that probable cause existed." Gates, at 238 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). Detective McClure signed an affidavit indicating that she had contacted ATF agents in Virginia and learned that J. Will Robinson was a convicted felon. As a convicted felon, J. Will Robinson is not allowed to possess a firearm or ammunition. See 18 U.S.C. § 922(g)(1). A named citizen, Mr. Hodges, had informed Detective McClure and her colleagues that he had seen J. Will Robinson in possession of two different guns and assorted types of ammunition over the course of two days. Such evidence would likely suffice as probable cause to establish that the van Defendant was driving contained weapons and/or ammunition.

Instead of attempting to obtain a warrant at that juncture, however, Detective McClure corroborated what the citizen-witness had told her. Mr. Hodges had stated that J. Will Robinson told him that he posed as an ATF agent and obtained supplies. Detective McClure, looking through the van's windows, saw, in plain sight, a vest, badge, and helmet – all items which could presumably be purchased at an ATF armory and which corroborated the information provided by Mr. Hodges. The vest in particular corroborated his statement that Defendant was wearing a

vest.[5] Furthermore, impersonating an ATF agent is also a crime. See 18 U.S.C. § 912. Any items purchased would be evidence of this crime. Accordingly, giving the required deference to the issuing judge, this Court finds that there was sufficient probable cause in the affidavit to believe that the evidence of a crime would be found in the van named in the search warrant. Therefore, this Court determines that sufficient probable cause existed in the affidavit to support a search warrant. While Defendant argues the affidavit did not mention Defendant had been in the van, the affiant stated that after going outside, the citizen witness "saw that J. Will Robinson was driving the 2000 model white Ford Windstar van" in issue. While Defendant argues the affidavit does not mention seeing weapons and/or ammunition in the van, the fact that Defendant came to the citizen witness's house twice, while armed, claiming that he was going to shoot his way across the border, and had drums for an AR-15 firearm and had that day purchased "all kinds of stuff" from an armory, creates a distinct probability that other firearms, including an AR-15, and ammunition would be found in the van Defendant was driving. As such, this Court recommends Defendant's Motion to Suppress [Doc. 18] be denied. In the event the District Court disagrees with this Court's reasoning as to probable cause, a discussion of consent and good faith is merited.

**B.    Consent**

An individual's voluntary consent to a search is an exception to the warrant requirement of the Fourth Amendment. A valid search may be made without a warrant and without probable cause if the person voluntarily consents to the search. Schneckloth v. Bustamante, 412

---

[5]Although not raised by Defendant, independent corroboration is generally not required where the informant, as here, is named and thus subject to prosecution for providing false information. Miller v. United States, 314 F.3d 265 (6th Cir. 2002), cert. denied, 539 U.S. 908 (2003).

11

U.S. 218, 219, 228-29 (1973). The applicability of this exception is evaluated by examining the totality of the circumstances, with the burden resting on the government to prove actual consent. United States v. Scott, 578 F.2d 1186, 1188-89 (6th Cir. 1978). The government must prove consent by a preponderance of the evidence. United States v. Worley, 193 F.3d 380, 385 (6th Cir. 1999); see also United States v. Saenz, No. 99-20276, 2000 WL 33725117, at *7 (W.D. Tenn. Mar. 22, 2000).

Generally, the person in possession of a "movable container" has authority over the space and can consent. United States v. Jenkins, 92 F.3d 430, 437 (6th Cir. 1996); United States v. Dunkley 911 F.2d 522, 526 (11th Cir. 1990) (stating that the person in sole possession and control of the vehicle clearly has the authority to consent to its search). However, the person in possession of the vehicle may not be the only person capable of giving consent. Jenkins, 92 F.3d at 436 (noting that an owner of a vehicle has a right to consent to a search that may also be shared with the person in possession of the vehicle). Consent authority may be shared between an individual who is present and another individual who is absent. United States v. Matlock, 415 U.S. 164, 171 (1974); see United States v. Eden, 190 Fed. Appx. 416, 423 n.4 (6th Cir. June 22, 2006) (unpublished) (stating in dicta that a rental car agency can consent to a search of its car over the objection of a non-authorized driver occupant); United States v. Doreste, 947 F.2d 942, 1991 WL 222116, at *2 (4th Cir. 1991) (unpublished) (per curiam) (holding that an absentee owner of tractor-trailer had standing to seek suppression of evidence obtained from a search of the rig). The Court further notes the recent Supreme Court case, Georgia v. Randolph, 547 U.S. 103 (2006), confirmed that when two persons share access to or control over an area, either or both may validly consent to a search. Furthermore, under the Randolph holding, the consent by the Defendant's mother and van's

registered owner would be valid because the Defendant was neither present nor objected to the consent to search.

Where a third party consents to the search, the burden of establishing that the third party possesses common authority to consent rests with the government. United States v. Gillis, 358 F.3d 386, 390 (6th Cir. 2004) (citing Illinois v. Rodriguez, 497 U.S. 177, 181 (1990)). A third party may validly consent to a search if that third party has common authority over or a sufficient relationship to the area to be searched. United States v. Morgan, 435 F.3d 660, 663 (6th Cir. 2006). "'Apparent authority is judged by an objective standard'"and is measured based on the facts available to the police at the moment the search began. Id. at 663-64 (quoting Gillis, 358 F.3d at 390-91).

In this case, Detective McClure contacted the registered owner of the van, Vickie Givens, and learned that she was J. Will Robinson's mother. Ms. Givens further stated that she was concerned about her son's welfare and not only asked, but actually requested, that the van be searched.[6] "The critical facts, . . . are not the actual relationship between the consenter and the owner, but how that relationship appears to the officer who asked for consent." Jenkins, 92 F.3d at 436; Florida v. Jimeno, 500 U.S. 248 (1991). Accordingly, even if a third party does not have the authority to consent to the search, the Fourth Amendment is not violated if "[t]he police conducted the search in good faith reliance on the third-party's apparent authority to authorize the search. . . ." Morgan, 435 F.3d at 663 (emphasis omitted); see also Gillis, 358 F.3d at 390 (citing Rodriguez, 497 U.S. at 188-89 (holding the same)).

---

[6]The government did not argue that exigent circumstances applied. Accordingly, that argument is not before this Court.

13

A reasonable officer, based on the totality of the circumstances, could decide that Ms. Givens had the requisite authority to consent to a search of her vehicle,[7] and an officer could reasonably decide that the owners' (mother's) consent was valid, and that such consent allowed a search of the van without a warrant. See United States v. Buckles, 494 F.2d 1377, 1381 (8th Cir. 1974) (citing to Weaver v. Lane, 382 F.2d 251 (7th Cir. 1967) (holding that a host can consent to a search of his premises occupied by a guest)); see also Gillis, 358 F.3d at 390 (holding that apparent authority to consent to a search of the residence existed where a woman's name was on the lease, she claimed she lived in that residence, and she consented to the search). Because a reasonable officer in Detective McClure's position could have determined that Ms. Givens had authority to consent to a search of the van, the consent validates the search should the District Court deem the search unreasonable based upon the affidavit and subsequent search warrant.

**C.     Good Faith**

Finally, the government argues that even if the affidavit is insufficient to provide probable cause, the officers acted in good faith in executing the search warrant, and the evidence should not be suppressed under United States v. Leon, 468 U.S. 897 (1984). The defendant contends that the "good faith exception" established by Leon does not apply in this case because the affidavit did not provide the issuing judge with a substantial basis for finding probable cause. Although this Court has previously found that the affidavit provided a basis for finding probable cause to issue a

---

[7]No evidence was introduced at the hearing which would give the Court any information as to how Defendant came into possession of the van. Defendant's supplemental brief provides no facts or evidence to support the allegation that Defendant had purchased that van from his mother and was the rightful owner. Because this allegation is contrary to the prior evidence, it would be incumbent upon Defendant to establish such an alleged fact. However, the issue and legal holding as to the officer's reasonable understanding of the relationship is unaffected by this allegation.

14

search warrant, the Court will examine the applicability of the good faith exception in the event that the District Court disagrees that the affidavit establishes probable cause for the warrant's issuance.

In Leon, the Supreme Court recognized that the deterrent effect of the judicially created exclusionary rule did not extend to situations in which an officer in objective good faith obtains a search warrant from a judge and acts within the scope of that warrant. 468 U.S. at 920. "In the ordinary case, an officer cannot be expected to question the [judge's] probable-cause determination or his judgment that the form of a warrant is technically sufficient. . . . . Penalizing the officer for the [judge's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Id. at 921. The fact that a judge has issued a warrant typically will establish that the officer has conducted the search pursuant to said warrant in good faith, but the officer's reliance upon the warrant must be objectively reasonable. Id. at 922. In other words, the good-faith inquiry turns upon "whether a reasonably well-trained officer would have known that the search was illegal despite the [judge's] authorization." Id. at 922 n.23. In creating this standard, the Supreme Court set out four situations in which suppression pursuant to the exclusionary rule applied despite the officer's reliance upon a judicially-issued search warrant: (1) "if the . . . judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," (2) if the issuing judge "wholly abandoned his judicial role" requiring neutral detachment and, in essence, acted as "'an adjunct law enforcement officer,'" (3) if the "warrant [was] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" and (4) if "the warrant [is] so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized–that the executing officers cannot reasonably presume it to be valid." Id. at

923 (quoting Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326-27 (1979) and Brown v. Illinois, 422 U.S. 590, 610-11 (1975) respectively).

In the present case, the affiant did not present the issuing judge with a "bare bones" affidavit. The Sixth Circuit has defined a bare bones affidavit as a "conclusory affidavit," which gives only the affiant's belief of the existence of probable cause. United States v. Williams, 224 F.3d 530, 533 (6th Cir. 2000); see also United States v. Weaver, 99 F.3d 1372, 1378 (6th Cir. 1996) (observing that a bare bones affidavit is one that "states suspicious beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge"). The affidavit in this case contains facts, not just the affiant's conclusions or beliefs. Additionally, the affiant conveyed statements from a named witness, her own corroboration of the witness's statements by looking through the van's windows, and consent by the vehicle's registered owner. The results of Detective McClure's investigation are stated in the affidavit. Therefore, as the Supreme Court held in Leon, the Court finds that a reasonably well-trained officer would have relied upon the issuing judge's determination that the affidavit provides probable cause to search the defendant's residence. Accordingly, this Court finds that the officers acted in good faith, and the good faith exception would apply in the event the affidavit is held to be incapable of supporting the probable cause required to issue a search warrant.

## IV. CONCLUSION

After thorough consideration of the Affidavit provided to obtain the search warrant, the Court finds that sufficient probable cause existed to issue a search warrant. Accordingly, there is no basis to suppress any of the evidence seized in this case. For the reasons set forth herein, it is **RECOMMENDED** that Defendant J. Will Robinson's Motion to Suppress [Doc. 18] be **DENIED.**[8]

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[8] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).